IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANICE K.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

No. 6:20-cv-01536-HZ

OPINION & ORDER

Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401

John E. Haapala , Jr.
401 E. 10th Avenue, Suite 240
Eugene, OR 97401

      Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Erin F. Highland
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Janice K. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3). The Court affirms the Commissioner's decision

## PROCEDURAL BACKGROUND

    Plaintiff applied for DIB on September 6, 2017 alleging an onset date of October 1, 2015. Tr. 571, 647.[2] Plaintiff's date last insured ("DLI") is December 31, 2019. Tr. 741. Her application was denied initially and on reconsideration. Tr. 73.

    On August 28, 2019, Plaintiff appeared with a representative for a hearing before an Administrative Law Judge ("ALJ"). Tr. 90. On September 12, 2019, the ALJ found Plaintiff not disabled. Tr. 84. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

    Plaintiff alleges disability based on "Lupus, Heart Attack, Right Shoulder Tear." Tr. 572–73. At the time of her alleged onset date, she was 48 years old. Tr. 571. She has completed high

---

[2] Citations to "Tr." refer to the pages indicated in the official transcript of the administrative record, filed herein as Docket No. 11-1.

school and has past relevant work experience as a veneer dryer feeder, veneer joiner off-bearer, veneer grader. Tr. 82.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 75. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "systemic lupus erythematosus (SLE); status-post myocardial infarct; bilateral shoulder degenerative joint disease; lumbar degenerative disc disease; a panic disorder NOS; a major depressive disorder; and a somatic symptom disorder." *Id.* However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id.* At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for six hours in an eight-hour day, and stand or walk for six hours in an eight-hour day. She can occasionally climb ramps, and stairs, but should avoid climbing ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead, but frequently reach in all other directions bilaterally. She can tolerate no exposure to unprotected heights and moving vehicles in the workplace. She can understand, remember, and carry out simple, routine tasks consistent with a general educational development

4 – OPINION & ORDER

> (GED) reasoning level of two. She can make only simple work-related decisions. She can tolerate only occasional interaction with coworkers, supervisors, and the public. Time off task would be covered by normal breaks**.**

Tr. 78. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 81. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "Bench Assembler," "Electronics Worker," "Garment Sorter," and "Photocopy Machine Operator." Tr. 83. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 84.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

//

//

**DISCUSSION**

Plaintiff argues the ALJ erred in rejecting (1) her subjective symptom testimony; (2) the opinion of consultative examiner Dr. Scott Alvord; and (3) the lay witness opinion of her husband.

**I.    Subjective Symptom Testimony**

Plaintiff contends the ALJ improperly discounted her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Prior to her alleged onset date, Plaintiff worked for 15 years a general laborer in the mills. Tr. 707. Plaintiff testified that anxiety, depression, and shoulder pain prevent her from continuing to work. Tr. 99. She has pain and aching in her hands and feet from Lupus. Tr. 101. Her grip is impacted. Tr. 101. She can lift eight pounds and uses two hands to put a half a gallon of milk in the fridge. Tr. 108. She testified that she can sit for an hour or so and can stand for a couple of hours if she shifts positions. Tr. 102. She does housework and prepares meals but takes breaks as needed. Tr. 99, 105. For example, she testified that she breaks an activity like vacuuming up into four parts. Tr. 105. She walks her dogs up to two miles a day. Tr. 102. She naps a few times a day. Tr. 105. She gets worn down throughout the day which affects her depression. Tr. 105.

The ALJ provide three reasons for discounting Plaintiff's subjective symptom testimony: (1) the objective medical evidence; (2) conservative treatment; and (3) Plaintiff's activities of daily living.

//

//

7 – OPINION & ORDER

A.      Inconsistency with Medical Evidence

Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). An ALJ may also consider objective medical evidence in evaluating a plaintiff's subjective symptom testimony, so long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. § 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] . . . [w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." (internal quotation and brackets omitted)); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("Graphic and expansive" pain symptoms could not be explained on objective, physical basis by claimant's treating physician).

The ALJ found Plaintiff's allegations "not consistent with the medication record." Tr. 81. He observed that despite her "Lupus, degenerative disc disease and shoulder joint arthritis her range of motion was limited but she had a normal gait, intact muscle strength, sensation and reflexes." *Id.*

8 – OPINION & ORDER

The ALJ's reasoning as to the objective medical evidence is not a clear and convincing reason to discount Plaintiff's testimony. First, Plaintiff does not allege problems with her gait, sensation, or reflexes. Thus, these findings are not inconsistent with her allegations. Next, the medical evidence the ALJ cites is not inconsistent with her testimony. In fact, a review of these records shows that they support and are consistent with Plaintiff's allegations related to her shoulder pain and Lupus symptoms. *See* Tr. 779 (pain in shoulder, cannot complete special tests); Tr. 793 (pain in shoulder with strength testing); Tr. 803 (weakness in shoulder on exam); Tr. 860 (pain in right shoulder, reported "trouble turning doorknobs or cooking"); Tr. 923 (weak grip bilaterally); Tr. 996 (synovitis in finger joints and diffuse hand tenderness); Tr. 1070 (diffuse hand tenderness). Accordingly, this finding was not supported by substantial evidence.

**B.     Conservative Treatment**

The ALJ discounted Plaintiff's testimony based on "conservative treatment" and wrote the following: "the claimant's treatment has been very conservative, largely over-the-counter and prescription medication. She has not generally received the type of medical treatment one would expect for a totally disabled individual." Tr. 22. An ALJ may rely on a plaintiff's use of conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (finding that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). But here, the ALJ's broad generalization is not sufficient to discount Plaintiff's testimony and the record does not support this finding.

There is no evidence in the record that Plaintiff declined an available alternative or more aggressive treatment for her Lupus. And the most recent records documenting Plaintiff's treatment contradict the ALJ's finding. They show that Plaintiff has tried various prescription medications over a series of years. Tr. 161, 181. Though she saw some improvement with these

medications, she had to switch treatments multiple times due to side effects and is currently on a "high risk" medication that requires regular monitoring. *Id.* Tr. 165, 181, 1056.

As far as her right shoulder tear, the ALJ acknowledges that Plaintiff has tried "multiple treatment modalities." Tr. 80. At the hearing, after inquiry from the ALJ as to orthopedic surgery, Plaintiff testified that she is not a candidate for a surgical repair and has been told that she is too young for a total shoulder replacement. Tr. 100. There is nothing in the record that refutes Plaintiff's testimony as to why she has not had orthopedic surgery on her right shoulder.

### C.  Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility." *Webb v. Barnhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722.

The ALJ found that Plaintiff's "activities indicate a higher level of function than alleged by the claimant." Tr. 81. He noted that Plaintiff "could perform adequate self-care, prepare

meals, do household chores, and go out to the store" and that she "was walking as much as 2.5 miles daily." *Id.*

The ALJ did not err by finding Plaintiff's subjective symptom testimony not fully credible. Substantial evidence supports the ALJ's specific, clear, and convincing finding about Plaintiff's daily activities. Plaintiff walks her dogs up to two miles a day. Tr. 102, 716. She feeds her dogs, and cleans the yard after them, though her husband does most of the brushing. Tr. 716. Plaintiff testified that even on her "bad days" she is still able to walk her dogs. Tr. 106. After walking, she manages her own personal care, does household chores, such as laundry and vacuuming, and prepares meals. Tr. 716. In her Function Report she wrote that she does "all laundry, grocery shopping, and cooking." Tr. 716. At the hearing and in her Function Report, Plaintiff testified that these activities take her longer than they used to or that she rests as needed while completing various tasks. *Id.*; Tr. 105.

Plaintiff contends regular dog walking is not inconsistent with her testimony because she did not allege significant limitations related to walking. Still, the ALJ reasonably concluded that this level of activity contradicts Plaintiff's allegations of disabling fatigue, problems with grip, and persistent pain in her hands and feet. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, ... and whether the claimant engages in daily activities inconsistent with the alleged symptoms." (citation and quotations omitted)). Thus, the ALJ permissibly relied on the inconsistencies between Plaintiff's symptom testimony and her activities of daily living to find her testimony about the severity of her symptoms not credible.

//

//

11 – OPINION & ORDER

## II. Consultative Examiner Dr. Scott Alvord

Plaintiff argues the ALJ erred in failing to include or reject some limitations identified by consultative examiner Dr. Scott Alvord in the RFC.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain to how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Dr. Alvord conducted a one-time consultive psychiatric exam of Plaintiff and reviewed her records. Tr. 1084–88. He found that Plaintiff would have no difficulty performing simple and repetitive tasks and "moderate difficulty" with the following tasks: performing detailed and complex tasks, accepting instructions from supervisors, interacting with co-workers and the public, performing work activities on a consistent basis without special or additional

instructions/accommodations, maintaining regular attendance, completing a normal workday/workweek without interruptions from a psychiatric condition, and dealing with usual stress encountered in the workplace. *Id.*

The ALJ found the opinion of consulting psychologist Dr. Alvord persuasive and "generally consistent with his examination of the claimant, as well as the overall evidence of record." Tr. 81. Plaintiff does not object to the ALJ's conclusion about Dr. Alvord's opinion. Instead, she argues he erred by not including the last four limitations into the RFC or providing a reason to reject these findings. These are: performing work activities on a consistent basis without special or additional instructions/accommodations, maintaining regular attendance, completing a normal workday/workweek without interruptions from a psychiatric condition, and dealing with usual stress encountered in the workplace. Tr.1087–88.

The ALJ did not err in his consideration of Dr. Alvord's opinion. Plaintiff contends that Dr. Alvord's opinion establishes limitations that exceed the vocational expert's testimony that employers will not tolerate more than one day of absenteeism per month or being off task more than ten percent of the workday. Pl. Brief at 13. But beyond Plaintiff's general argument about the meaning of term "moderate," she does not point to any specific limit or other finding in Dr. Alvord's report that demands this conclusion.

The Social Security regulations do not provide a standard definition for the term "moderate." *Holland v. Colvin*, No. ED CV 15-0408-DFM, 2016 WL 928665, at *3 (C.D. Cal. Mar. 4, 2016) (citations omitted). As Plaintiff concedes in her reply brief, however, courts in the Ninth Circuit "have held that a finding of 'moderate' limitations reflects that the mental impairment is not sufficiently severe as to have a significant impact on Plaintiff's ability to perform work activity." Pl. Reply at 7, ECF 18; *see also Margarita S. v. Saul*, No. ED CV 19-

906-SP, 2020 WL 6899609, at *4 (C.D. Cal. Nov. 24, 2020) (ALJ accounted for moderate mental limitations in RFC "by limiting plaintiff to 'simple and routine instructions, occasional contact with the public, occasional changes in the workplace setting, being off-task 5% of the workday, and being absent one day per month.'"); *Hughes v. Colvin*, 599 Fed. App'x 765, 766 (9th Cir. 2015) (ALJ's RFC assessment accounted for moderate difficulties in social functioning, concentration, and persistence by restricting plaintiff to simple, routine, repetitive tasks in job where she could work independently, with no more than occasional public interaction); *McLain v. Astrue*, No. SACV 10-1108 JC, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011) ("Moderate mental functional limitations—specifically limitations in social functioning and adaptation—are not *per se* disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks."); *Serna v. Astrue*, No. CV 08-01673-VBK, 2008 WL 5179033, at *3 (C.D. Cal. Dec. 9, 2008) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006) and finding that a plaintiff "found to have a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting would still be able to satisfactorily function in this area."). Here, all of Dr. Alvord's assessed moderate impairments relate to Plaintiff's mental functioning. Plaintiff has failed to identify a case or offer a regulation that supports her theory that these moderate mental limitations warranted a more restrictive RFC. Given the prevailing understanding of the term "moderate" when evaluating mental impairments, the RFC adequately accounted for the limitations identified by Dr. Alvord by limiting Plaintiff to "simple, routine tasks," to making only "simple work-related decisions" and "only occasional interaction with coworkers, supervisors, and the public." Tr. 79.

//

//

14 – OPINION & ORDER

### III. Lay Witness Testimony

Plaintiff argues the ALJ erred by failing to provide a reason to reject the lay witness testimony of Plaintiff's husband, Dirk K. Plaintiff's husband wrote that she has problems with fatigue, lifting household items, holding her arms up for long periods of time, and grip strength. Tr. 733–34. He wrote that preparing meals and completing household chores takes her twice as long as it used to. Tr. 735.

The ALJ wrote that he "considered the supportive statements and observations from the claimant's husband [Dirk K.] concerning the claimant's impairments and associated decreased work capacity when determining the above residual functional capacity." Tr. 81. Plaintiff contends the ALJ erred by not discussing what statements were included versus discounted and failing to provide a germane reason for rejecting Plaintiff's husband's lay witness statement.

Because Dirk K.'s testimony regarding Plaintiff's functional limitations was very similar to Plaintiff's own symptom testimony, the specific, clear, and convincing reasons the ALJ provided to find Plaintiff less than fully credible are sufficient to discount his lay testimony. *Molina*, 674 F.3d at 1118–19 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless.); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Thus, any error by the ALJ in failing to provide a germane reason to discount Dirk K.'s testimony was harmless.

//

//

//

## CONCLUSION

Based on the above, the Commissioner's decision is AFFRIMED.

IT IS SO ORDERED.

DATED: _____May 6, 2022_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge